# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF OHIO

# EASTERN DIVISION

**LUKASZ SUHAK**                                    )
   3040 West Ridgewood Drive
   Parma, OH 44134                          )

                   Plaintiff,    )

     **-vs-**                                     )

                            )

**EUCLID CITY SCHOOL DISTRICT**         )   **C O M P L A I N T**
   651 East 222nd Street
   Euclid, OH 44123                          )

     and                                          )

                            )

**CHRISTOPHER PAPOURAS**, in his         Trial by Jury Endorsed Hereon
capacity as Superintendent of the Euclid      )
City School District,
   651 East 222nd Street                    )
   Euclid, OH 44123

                            )

     and                                          )

**PATRICK HIGLEY**, in his capacity as     )
Director of Business Operations and
personally,                                        )
   651 East 222nd Street                    )
   Euclid, OH 44123

                            )

     and                                          )

**KEVIN KELLY**, in his capacity as                     )
Security Foreman and personally
     651 East 222nd Street                                )
     Euclid, OH 44123                                      )

       and                                              )

                                                        )

**INDIA JACKSON ,** in her capacity as                  )
Director of Human Resources and
personally,                                             )
     651 East 222nd Street                                )
     Euclid, OH 44123

                                                        )

       and                                              )

                                                        )

**DONNA SUDAR**, in her capacity as                     )
President of the Board of Euclid City
School District                                         )
     651 East 222nd Street                                )
     Euclid, OH 44123

                                                        )

       and                                              )

**KATHY DeANGELIS,** in her capacity as                 )
Vice President of the Board of Euclid City
School District                                         )
     651 East 222nd Street                                )
     Euclid, OH 44123

                                                        )

       and                                              )

**STEVE JOHNSON, JR**. in his                           )
capacity as a Member of the Board of
Euclid City School District                             )
     651 East 222nd Street                                )
     Euclid, OH 44123

2

)

    and

)

**TISHA R. THOMAS,** in her capacity as a
Member of the Board of the Euclid City
School District
   651 East 222nd Street
   Euclid, OH 44123

)

)

)

    and

)

**ANGELA LISY**, in her capacity as a
Member of the Board of the Euclid City
School District
   651 East 222nd Street
   Euclid, OH 44123

)

)

)

Defendants.

---

## INTRODUCTION

1. This is an action which seeks, *inter alia,* relief from the arbitrary exercise of governmental authority resulting in the deprivation of federally protected property and liberty interests of the plaintiff by defendants under color of state law by the utilization of twelve (12) arbitrary, capricious and unreasonable standards in justifying termination of a public employee.

2. The claims by the Plaintiff Lukasz ("Luke") Suhak, a former classified school district security officer, are predicated on twelve (12) unconstitutional standards exercised under color of state law to terminate the public employment of the Plaintiff based the intentional disregard of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United State, as participants

in a conspiracy to deprive the Plaintiff of rights ensured under the Fourteenth Amendment and in violation of Defendant Euclid City School District's own policy which requires that it comport with appropriate procedural and substantive due process for employers including Security Officers.

3. According to Euclid City School District procedures, Plaintiff Luke Suhak was entitled to a fair process regarding conduct which did not violate any law or policy under the Constitution of the United States, the laws of Ohio or the policies of Defendant Euclid City School District.

## CLAIMS

4. Plaintiff Lukasz Suhak initiates this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, through which he asserts claims of violations of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and under 42 U.S.C. § 1985 in conspiring among Defendants to deprive the Plaintiff of civil rights ensured under the Constitution of the United States.

## JURISDICTION

5. Jurisdiction is invoked pursuant to 28 U.S.C §§ 1331 and 1343(3) and (4). To the extent declaratory relief is sought, claims are asserted pursuant to 28 U.S.C. §§ 2201 and 2202.

## **PARTIES**

6. Plaintiff, LUKASZ (LUKE) SUHAK, is a citizen of the United States and has served as an effective and popular classified Security Officer for the Defendant Euclid City School District since December, 2016.

7. Defendant EUCLID CITY SCHOOL DISTRICT is a political subdivision of the State of Ohio charged with the administration of a public school district, is obligated to operate pursuant to the rules and regulations of the State of Ohio and pursuant to obligations under the Constitution of the State of Ohio and the United States, is the entity operating public education in and for the City of Euclid and is otherwise responsible for the formulation, implementation and enforcement of all policies, practices, procedures, acts and conduct regarding the administration of matters affecting the children attending public schools in the City of Euclid, and regarding the administration of matters affecting the employees of the District including defined policies for its Security Officers.

8. Defendant CHRISTOPHER PAPOURAS is the former Acting Superintendent and present Superintendent of Defendant Euclid City School District, and is obligated to work pursuant to the rules and regulations of the State of Ohio and pursuant to obligations under the Constitution of the State of Ohio and the United States and, as such, he is responsible for the formulation, implementation and enforcement of all policies, practices, procedures, acts, and

conduct regarding the administration of public education in the District including defined polices for its Security Officers.

9. Defendant PATRICK HIGLEY is the Director of Business Operations of Defendant Euclid City School District, and is obligated to work pursuant to the rules and regulations of the State of Ohio and pursuant to obligations under the Constitution of the State of Ohio and the United States and, as such, he is responsible for the formulation, implementation and enforcement of all policies, practices, procedures, acts, and conduct regarding the administration of public education in the District including defined policies for its Security Officers.

10. Defendant KEVIN KELLY is the Security Foreman of Defendant Euclid City School District, and, as a former police chief, is or should be familiar with the concept of the presumption of innocence, is obligated to work pursuant to the rules and regulations of the State of Ohio and pursuant to obligations under the Constitution of the State of Ohio and the United States and, as such, he is responsible for the formulation, implementation and enforcement of all policies, practices, procedures, acts, and conduct regarding the administration of public education in the District including defined policies for its Security Officers.

11. Defendant INDIA JACKSON is Director of Human Resources of Defendant Euclid City School District, is obligated to work pursuant to the rules and regulations of the State of Ohio and pursuant to obligations under the Constitution of the State of Ohio and the United States and, as such, she is

responsible for the formulation, implementation and enforcement of all policies, practices, procedures, acts, and conduct regarding the administration of public education in the District including defined policies for its Security Officers.

12. Defendant DONNA SUDAR is President of the Euclid City School District's Board of Education and is obligated to work pursuant to the rules and regulations of the State of Ohio and pursuant to obligations under the Constitution of the State of Ohio and the United States and, as such, she is responsible for the formulation, implementation and enforcement of all policies, practices, procedures, acts, and conduct regarding the administration of public education in the District including defined policies for its Security Officers.

13. Defendant KATHY DeANGELIS is Vice President of the Euclid City School District's Board of Education and is obligated to work pursuant to the rules and regulations of the State of Ohio and pursuant to obligations under the Constitution of the State of Ohio and the United States and, as such, she is responsible for the formulation, implementation and enforcement of all policies, practices, procedures, acts, and conduct regarding the administration of public education in the District including defined policies for its Security Officers.

14. Defendant STEVE JOHNSON, JR. is a member of the Euclid City School District's Board of Education and is obligated to work pursuant to the rules and regulations of the State of Ohio and pursuant to obligations under the Constitution of the State of Ohio and the United States. As such, he is

7

responsible for the formulation, implementation and enforcement of all policies, practices, procedures, acts, and conduct regarding the administration of public education in the District including defined policies for its Security Officers.

15. Defendant TISHA R. THOMAS is a member of the Euclid City School District's Board of Education and is obligated to work pursuant to the rules and regulations of the State of Ohio and pursuant to obligations under the Constitution of the State of Ohio and the United States. As such, she is responsible for the formulation, implementation and enforcement of all policies, practices, procedures, acts, and conduct regarding the administration of public education in the District including defined policies for its Security Officers.

16. Defendant ANGELA LISY is a member of the Euclid City School District's Board of Education and is obligated to work pursuant to the rules and regulations of the State of Ohio and pursuant to obligations under the Constitution of the State of Ohio and the United States. As such, she is responsible for the formulation, implementation and enforcement of all policies, practices, procedures, acts, and conduct regarding the administration of public education in the District including defined policies for its Security Officers.

### Count I

### Efforts to Convince  Officer Luke to Resign with No Evidence by a Government Official Violated Officer Luke's Procedural and Substantive Rights Under the Due Process Clause of the Fourteenth Amendment

17. Plaintiff reasserts the foregoing allegations and incorporates them as if fully set forth herein.

18. Over recent years the administration and performance by the Defendant Euclid City School District has rated it an "F" in achievement by the Ohio Department of Education.

19. Defendant Euclid City School District was also rated an "F" in progress by the Ohio Department of Education.

20. Defendant Euclid City School District was also rated an "F" in graduation rates by the Ohio Department of Education.

21. Defendant Euclid City School District was also rated an "F" in preparing students for success by the Ohio Department of Education.

22. The consistent failures on so many levels by Defendant Euclid City School District has driven quality teachers and quality administrators out of the school district.

23. Because of the dire straits of public education in Euclid, students could count on fewer and fewer employees who demonstrate reliability and care in the absence of which have contributed to student failure and student low performance.

24. One consequence of the dire problems in public education in Euclid is that Defendant Euclid City School District have failed to train administrators about

the procedural and substantive requirements of the Fourteenth Amendment's Due Process Clause in the Constitution of the United States.

25. In order to ensure compliance with the constitutional rights of government employees, Defendant Euclid City School District has not adequately provided policies ensuring due process protections of the public school district's employees.

26. One of the few exceptions in the failing state of Defendant Euclid City School District and the absence of reliability and care toward students in the Euclid City School District was Euclid City School District Security Officer Lukasz "Luke" Suhak.

27. Since 2016, Officer Luke Suhak has been an effective and popular Security Guard at Euclid High School.

28. "Officer Luke," as Euclid High School students referred to him, was known for his outreach to help students, for his professional interest in their school work and was shown respect and affection by Euclid high school students who knew that he could be counted on by them for their assistance and protection.

29. Officer Luke, for example,  commonly received written communications from Euclid High students expressing

"thank[s] for being [a] fantastic Security guard."

and

> "[w]henever I see you I get happy because I know
> you'll find a way to make me laugh/smile."

30. In particular, Officer Luke was far more than a standard district employee because he actively and professionally ensured that students abided by school rules and was met with the gratitude of students who, among other things, was thanked

> "for getting my grades up and supporting me."

31. Students at Euclid High became reliant on Officer Luke because of Officer Luke's professional steadfastness ("When I'm going through stuff I know I can count on you") and guidance ("You give good advice most of the time when I need it.").

32. While Officer Luke's popularity likely generated jealousy and discontent among superiors who were far less accessible and respected by students, Defendant Euclid City School District's Security Foreman for the majority of Officer Luke's public service considered him an outstanding employee, a benefit to the students and an important contributor in trying to make a failing school district better for students.

33. Because of deteriorating conditions within the school district and because of better opportunities elsewhere, Officer Luke's superior, the Security Foreman, left to become security chief in the early part of 2019 to work for another large suburban Greater Cleveland school district.

34. Officer Luke was a one-person effort to combat Defendant Euclid City School District's consistent and comprehensive record of failure year after year by showing professional interest in and being interested in students, particularly those who struggled.

35. In January, 2017, a Euclid High School student was assigned an English project by her teacher which required the student to choose a Euclid City School District staff member as the subject.

36. The student, "Jane Doe," chose Officer Luke.

37. The Euclid High School English teacher took photographs of Officer Luke for the student's project.

38. At the completion of the English project, Officer Luke received a thank you note from the student, Jane Doe, at the end of the school year for helping her professionally.

39. Between September, 2017 through March, 2018, the mother of Jane Doe introduced herself to Officer Luke and expressed deep gratitude for his being supportive of her daughter.

40. By March, 2018, Officer Luke was informed by Jane Doe's mother learned that Jane Doe was in danger of failing the school year.

41. With the encouragement by Jane Doe's mother, Officer Luke communicated with Jane Doe's counsellor and helped her get through her courses, except for

Algebra I which required attendance in summer school in order to proceed with her class for the 2018-2019 academic year.

42. Between September, 2018 through January, 2019, Jane Doe's mother, a single woman who is required to work second shift, would regularly communicate with Officer Luke about Jane Doe.

43. Jane Doe's mother requested Officer Luke's phone number in order for her to call him in case of a problem.

44. Notwithstanding Officer Luke's encouragement, Jane Doe again failed multiple classes during the second quarter.

45. And, in February, 2019, Jane Doe received a one-week suspension for a physical altercation.

46. To avoid Jane Doe's failure for the entire year, her mother texted Officer Luke to secure Jane Doe's school work because none of the principals at Euclid High School were returning her urgent calls to get help for her daughter.

47. Officer Luke responded to the mother's text and advised that he would communicate with the dean to get in touch with her.

48. At Jane Doe's mother's request, Officer Luke communicated with all of Jane Doe's teachers, but advised the mother that, in order to get direct assistance for her daughter, she would be required to communicate directly with the teachers rather than having a security guard intervene directly.

49. On March 19, 2019, Jane Doe's mother asked Officer Luke to take her daughter's cell phone because she was falling asleep in class and was not awake to receive her algebra teacher's information.

50. On March 22, 2019, Officer Luke informed Jane Doe's mother that he had provided her daughter with her weekly progress reports which required the signatures of all the teachers and of Jane Doe's mother.

51. At the direction of her mother, Jane Doe relinquished her phone to Officer Luke during school hours.

52. In May, 2019 when Jane Doe was hospitalized, her mother requested that Officer Luke request from Jane Doe's teachers that they email to her daughter's assignments and worksheets.

53. When she returned to school, Jane Doe remained at school to work on her school assignments in the auditorium with Officer Luke and Ms. Hong, a language teacher, present.

54. With those monitoring efforts, Jane Doe completed and handed in all of her missing assignments for the quarter.

55. Officer Luke followed up with Jane Doe's mother about her daughter's improved grades and about the areas of deficiency which could be remedied before the quarter was over if Jane Doe prepared for final exams.

56. By late May, 2019, Jane Doe's mother expressed deep appreciation that Jane Doe had completed her English and science assignments monitored by Officer Luke and by others.

57. On May 24, 2019, Officer Luke messaged Jane Doe's mother that her daughter's grades were 4 'A's and 2 'B,' giving her a GPA of 3.57 and putting her on the Honor Roll.

58. The professional assistance of Officer Luke was a significant contribution to the success of a former failing Euclid High School student.

59. On July 13, 2019, Jane Doe and her mother came up to school and, with other students, went to see Officer Luke to wish him a happy birthday.

60. In order to maintain a professional relationship, Officer Luke declined their invitation to go to dinner with them.

61. On September 6, 2019, Jane Doe's mother messaged Officer Luke a picture of Jane Doe's grades which were no lower than a 'B.'

62. On September 10, 2019, Jane Doe's mother messaged Officer Luke to have him check if Jane Doe were late to class.

63. On September 12, 2019, after an open house, Jane Doe's mother visited Officer Luke to report to him that Jane Doe's teacher praised Officer Luke for encouraging Jane Doe to keep her grades up.

64. Teachers and other staff professionals acknowledged the sincere and hard work by Officer Luke in going above and beyond for students.

65. Professionals within the Euclid City School District shared with district administrators and board members the superlative efforts Officer Luke undertook for students.

66. On September 23, 2019, because of the road-based reports of Officer Luke's excellence in his work and devotions to the student of Euclid High School, Defendant Euclid Board of Education, Defendant Papouras and Defendants Sudar, DeAngelis, Johnson, Thomas and Lisy presented their official Certificate of Recognition to "Lakasz [sic]" Suhak,

<u>"Staff Member of the Month"</u>
<u>'for Creating a Culture of Excellence'"</u>

signed by Defendant Christopher Papouras and included Defendants Sudar, DeAngelis, Johnson, Lisy and Thomas.

67. The September 23, 2019 certification confirmed officially from the adult leadership of the Euclid City School District what the students of Euclid High School already knew: that Officer Luke devoted efforts above and beyond in generating excellence in school policy compliance and in his outreach to students.

68. On September 28, 2019, Jane Doe was reported missing from home and school.

69. Jane Doe's mother texted a message to Officer Luke that she filed a missing person's report.

16

70. Officer Luke provided Jane Doe's mother with names of Jane Doe's friends who might help in the search.

71. On September 29, 2019, Jane Doe's mother called Officer Luke to tell him Jane Doe had returned home and was safe.

72. On September 30, 2019, Defendant Euclid City School District transferred Officer Luke from the high school to the middle school.

73. On October 2, 2019, Jane Doe's mother texted Officer Luke to express her appreciation and offered to get Browns tickets for him.

74. Again, in order to maintain a professional relationship, Officer Luke declined.

75. On October 3, 2019, Jane Doe's mother texted and asked him to take Jane Doe's phone again because her daughter had gotten "smart" with her.

76. Officer Luke again declined, explaining he was not there to handle personal disputes between a student and a parent.

77. On October 8, 2019, Officer Luke was hanging signs with Officer Harris when Jane Doe came over to them to show them her completed chemistry class project which she explained was worth 200 points.

78. On October 15, 2019, Jane Doe's mother messaged a picture of Tiffany's Infinite Campus performance report, showing all 'A's and 'B's for the first quarter of school.

79. On October 23 and 25, 2019, Jane Doe's mother messaged Officer Luke that her daughter would be late to school.

80. On Monday, October 28, 2019, Officer Luke was stationed near the clinic during second period and spotted Jane Doe in the clinic changed for gym class after the bell rang.

81. Officer Luke observed Jane Doe, one of Jane Doe's girlfriends and another boy "hanging out" at the clinic.

82. Jane Doe was refusing to go to gym class.

83. Officer Luke encouraged her to go because it would impact adversely on her grade.

84. Jane Doe explained she had trouble with her mother and had tears in her eyes.

85. Officer Luke told Jane Doe, "Hey, come on, walk and talk with me," putting his arm around her shoulder and walked Jane Doe straight to the gym.

86. Jane Doe and her mother referred to Officer Luke's escort as including a "side hug" of encouragement to put the tears aside and not lose credit by failing to attend gym.

87. The efforts by Officer Luke were successful and Jane Doe complied with Officer Luke's instruction to go to gym.

88. Officer Luke was on assignment in the auditorium during sixth period lunch when he received a call to report to the security office.

89. Officer Luke was informed that a part-time "substitute" nurse who knew nothing of the history, professional relationship and struggle relationship among

Jane Doe, her mother and Officer Luke, had filed a "complaint" about his escorting Jane Doe to gym because of her "feeling" it was inappropriate.

90. The part-time "substitute" nurse knew nothing of the history of assistance given by Officer Luke, filed a "complaint" about his escorting Jane Doe to gym because it was her "feeling" it was inappropriate.

91. Defendant Kevin Kelly, the former City of Euclid Chief of Police and using his authority under color of state law as Security Foreman, told Officer Luke, with no formal notice, no formal charges, no information and no hearing, that he should consider resigning because of the "complaint" by the part-time substitute nurse.

92. Defendant Kelly conceded

> "I've watched you work multiple times and I know you do a good job."

93. However, Defendant Kelly made no effort to interview Jane Doe's mother.

94. Defendant Kelly additionally made no effort to interview Jane Doe.

95. Officer Luke was mystified by his superior pushing him to resign his position.

96. Defendant Kelly never spoke with the mother of Jane Doe to understand her regular requests for help from Officer Luke nor the specifics of how he moved Jane Doe, a failing student, to an Honor Roll student through his professional encouragement and support.

97. Defendant Kelly, acting under color of state law, also knew there were no facts to justify telling a subordinate to consider resignation, knew that Officer Luke denied any wrongdoing, knew well that he was presumed not guilty of anything, but intentionally used his governmental authority to attempt to remove Officer Luke from public employment.

98. Defendant Kelly also knew that Officer Luke had just been recognized by the Defendant Euclid City School District, Defendant Papouras and Defendant school board members as contributing to "excellence" within the school district as the school district's Staff Member of the Month.

99. Defendant Kelly knew his efforts to have Officer Luke resign violated his rights of due process because, as a superior to the Plaintiff, he sought to strip Officer Luke of his government employment without notice, hearing or facts to support such an action.

100.    The acts and conduct of the Defendants were intended to injure the Officer Luke for illegitimate reasons and known to the Defendants to be illegitimate.

101.    The acts and conduct of the Defendants, jointly and severally, are intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

102.     As a result of the acts and conduct of the Defendants, Plaintiff has suffered and will continue to suffer substantial loss in income and benefits, loss of reputation, serious physical injury and extreme mental distress.

## Count II

### The Unconstitutional Actions of Defendant India Jackson to an Unfounded "complaint" Against Officer Luke

103.     Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

104.     Defendant India Jackson believed that Officer Luke had retained legal counsel, but purposefully misled Officer Luke that he should not have a lawyer with him, that she didn't want him to bring a lawyer at a hearing, generating misinformation that there would be no reason to have a lawyer, knowing that he had the right to counsel, but used her authority under color of state law intentionally to strip Officer Luke from his governmental position as a district security guard.

105.     Defendant Kelly explained to other Defendants in the presence of Officer Luke by saying "I've watched you work multiple times and I know you do a good job."

106.     Notwithstanding, Defendant India Jackson did not know that no personal relationship between Jane Doe and Officer Luke ever existed and did not know that Officer Luke was not in possession nor did he have knowledge

of Jane Doe's telephone number nor social media contacts, but, nonetheless, Defendant Jackson intentionally used her authority under color of state law to strip Officer Luke from his governmental position as a district security guard.

107.    Defendant India Jackson also knew that Officer Luke had just been recognized by the Defendant Euclid City School District, Defendant Papouras and Defendant school board members as contributing to "excellence" within the school district as the school district's Staff Member of the Month.

108.    Defendant India Jackson knew that Euclid High School teachers were telling Officer Luke about Jane Doe's missing work having been asked by Jane Doe's mother to inquire from her teachers.

109.    Defendant India Jackson knew that Officer Luke was keeping the mother's inquiries professional, but used her authority under color of state law intentionally to strip Officer Luke from his governmental position as a district security guard.

110.    Defendant India Jackson knew that Jane Doe's mother had asked Officer Luke to hold Jane Doe's phone in the office during class when she learned that her daughter was doing poorly, but not when personal problems between mother and daughter arose, but nonetheless used her authority under color of state law intentionally to strip Officer Luke his governmental position as a district security guard.

111.     Defendant Jackson knew that her efforts to force Officer Luke out of his public employment violated his rights of due process because, as a superior to the Plaintiff, she sought to strip Officer Luke of his government employment without notice, hearing or facts to support such an action.

112.     Defendant India Jackson, under color of state law, accused Officer Luke of connecting with other students on social media even though she knew that was untrue and had no evidence which warranted her statement.

113.     The acts and conduct of Defendant Jackson were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

114.     As a result of the acts and conduct of the Defendants, Plaintiff will suffer substantial loss in income and benefits, loss of reputation, serious physical injury and extreme mental distress.

## Count III

### The Unconstitutional Actions of Defendant Patrick Higley to an Unfounded "complaint" Against Officer Luke

102. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

103. Defendant Patrick Higley knew that Officer Luke was aware of policy which prohibited personal relationships.

104. Defendant Patrick Higley knew that Officer Luke did not have Jane Doe's phone number.

105. Defendant Patrick Higley knew that Officer Luke did not follow Jane Doe on social media.

106. Defendant Patrick Higley knew that Officer Luke was diligent in watching out and otherwise protecting other children, but used his authority under color of state law intentionally to strip Officer Luke from his governmental position as a district security officer.

107. Defendant Patrick Higley also knew that Officer Luke had just been recognized by the Defendant Euclid City School District, Defendant Papouras and Defendant school board members as contributing to "excellence" within the school district as the school district's Staff Member of the Month.

108. Defendant Patrick Higley knew that Officer Luke was praised by his superior, Defendant Kelly, who stated in Defendant Higley's presence Defendant Kelly conceded "I've watched you work multiple times and I know you do a good job."

109. Defendant Higley knew that pursuit of an effort to terminate Officer Luke from public employment was not based on fact, but employed the position of his government authority to deny Officer Luke due process of law.

110. The acts and conduct of Defendant Higley were intended to injure Officer Luke for illegitimate reasons and known to him to be illegitimate.

111. The acts and conduct of Defendant Higley were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff

112. As a result of the acts and conduct of the Defendant Higley, Plaintiff has suffered and will continue to suffer substantial loss in income and benefits, loss of reputation, serious physical injury and extreme mental distress.

## Count IV

### The Conspiracy Among Defendants Patrick Higley, Kevin Kelly and India Jackson to Deprive Officer Luke of Constitutionally Protected Rights of Due Process of Law

113. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

114. Defendants Patrick Higley, Kevin Kelly and India Jackson were aware that students have been writing to Officer Luke for years expressing their gratitude for his intervention to help them academically, to encourage them to follow up on school assignments and to otherwise show trust in him as a devoted school district Security Officer at the high school.

115. Defendants Patrick Higley, Kevin Kelly and India Jackson, individually and collectively, all knew that Officer Luke had just been recognized in September, 2019 by the Defendant Euclid City School District, Defendant Papouras and Defendant school board members as contributing to "excellence" within the school district as the school district's Staff Member of the Month.

116. Defendants Patrick Higley, Kevin Kelly and India Jackson, individually and collectively, all made no reasonable efforts to independently obtain relevant evidence confirming Officer Luke's universal aid to children, nor did they interview students to confirm his high performance and devotion to the children at Euclid High School.

117. All the Defendants were aware of Defendant Kelly admission of Officer Luke's performance as an employment which was stated in their presence when Kelly said to Officer Luke:

> "I've watched you work multiple times and I know you do a good job."

118. In further violation of Plaintiff's constitutionally protected rights of due process of law, Defendants Patrick Higley, Kevin Kelly and India Jackson, individually and collectively, made no effort to interview Jane Doe or her mother to get facts, context, meaning, details and significance of Officer Luke's escorting Jane Doe from the clinic to the gym on October 28, 2019.

119. Defendants Higley, Kelly and Jackson, individually and collectively, used their position of governmental superiority to that of Officer Luke's to remove him from public employment in derogation of his right of due process.

120. The acts and conduct of the Defendants, jointly and severally, were intended to injure the Officer Luke for illegitimate reasons and known to the Defendants to be illegitimate.

121. The acts and conduct of the Defendants, jointly and severally, were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

122. As a result of the acts and conduct of the Defendants, Plaintiff will suffer substantial loss in income and benefits, loss of reputation, serious physical injury and extreme mental distress.

## **Count V**

### **The Conspiracy Among Defendants to Recommend Termination Based the Arbitrary Standard of Subjective "Perception"**

123. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

124. Despite overwhelming evidence to the contrary which Defendants Patrick Higley, Kevin Kelly and India Jackson, individually or collectively, intentionally ignored, they decided instead to have Officer Luke fired because of the part-time substitute nurse's inaccurate observation with defendants noting at times "perception" of a district employee, "is everything," despite the actuality of the facts.

125. Defendants Patrick Higley, Kevin Kelly and India Jackson, individually and collectively, based the recommendation to fire Officer Luke by the arbitrary standard of "perception," rather than on facts.

126. Defendants Patrick Higley, Kevin Kelly and India Jackson, individually and collectively, knew that terminating a government employee by relying on the arbitrary standard of "perception," rather than facts, violated, *inter alia*, school policy and rights ensured under the due process clause of the Fourteenth Amendment to the Constitution of the United States.

127. None of the Defendants have promulgated or implemented a fair policy which places employees on notice that they could be terminated from government employment without prior notice, or without a meaningful hearing based solely on tan arbitrary standard of "perception," rather than on facts.

128. Although the stability of the relationship between Jane Doe's mother and Officer Luke had factually and unquestionably been professional for over two (2) years, Defendant India Jackson, with the assent of Defendants Patrick Higley and Kevin Kelly, concluded Officer Luke had to be fired because, even if the parent and her child were "comfortable" with the actions of Officer Luke, employing an arbitrary standard of "perception" that it was "ok" with Defendant Euclid City School District to terminate, despite the absence of reasonable standards, notice, warnings and other requirements of fairness mandated by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

129. On Friday, November 1, 2019, Officer Luke was subjected to what Defendants called a meeting in which Officer Luke reminded Defendant Higley and the other Defendants in attendance of his directive to "build relationships with parents and the kids."

130. Defendant Kelly conceded to Officer Luke "I've watched you work multiple times and I know you do a good job."

131. Officer Luke explained how Euclid High School students would cease student misconduct when Officer Luke intervened at the time other Security Officers were unable to control the situation.

132. Defendants refused to consider the truth of those facts.

133. Defendants Euclid City School District, Higley, Kelly and Jackson, individually and collectively, knew that the notice seeking to obtain information that was relevant and objective was inadequate to comport with due process.

134. Defendants Euclid City School District, Higley, Kelly and Jackson knew, individually and collectively, that the intent of the meeting by them was to achieve their predisposition to fire Officer Luke.

135. Defendants Euclid City School District, Higley, Kelly and Jackson failed to provide Officer Luke any notice of his rights, his obligations and the obligations of the employer operating under color of state law.

136. Defendants Euclid City School District, Higley, Kelly and Jackson intentionally denied considering facts over speculation, rumor and perception in order to remove Officer Luke from public employment.

137. The acts and conduct of the Defendants were intended to injure Officer Luke for illegitimate reasons and known to the Defendants to be illegitimate.

138. The acts and conduct of the Defendants, jointly and severally, are intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

139. As a result of the acts and conduct of the Defendants, Plaintiff will suffer substantial loss in income and benefits, loss of reputation, serious physical injury and extreme mental distress.

## Count VI

## Defendants' Recommendation of Termination Based on Unsubstantiated "Rumors"

140. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

141. Defendant Higley noted in the meeting to justify Officer Luke's termination that "there's been rumors about you for a long time."

142. Officer Luke responded that he was unaware of any rumors, should be entitled to the facts upon which the defendants relied and knew that unsubstantiated rumors were not based on fact.

143. Defendants Euclid City School District, Higley, Kelly and Jackson, individually and collectively, had never warned Officer Luke about what, if any, the accusations of a "rumor" existed, the kind of "rumor" which would constitute a violation of school policy, when, if ever, a "rumor" occurred which could jeopardize his job, what the "rumor" was and that they intended to fire him because of "rumors" by employing their respective governmental authority under color of state law.

144. Defendant Higley unsurprisingly conceded

> "whether they're rumors or not, thank God we haven't found anything."

145. Without disclosing what any of the accusations of the "rumors" were, what facts served to support the accusations of "rumors," and what policy he violated, Defendant Higley stated to Officer Luke that "rumors" had been "elevated" up to the Superintendent of the Euclid City School District and up to members of the Board of Education.

146. Defendant Higley stated that the accusation of one "rumor" involved Officer Luke and a daughter of one of the members of the Euclid City School District

Board of Education, a singular incident where the board member's daughter was in the hallways without a pass.

147. Officer Luke responded that the Head of Security at the time, Joe Ridgely, informed him of the accusation of a "rumor" was proven to be unfounded.

148. In a stunning admission of the lack of due process policy by Defendant Euclid City School District, Defendant Higley under color of state law, stated that, if it ever came to a point there were a need to address rumors,

> "we [the school district] felt like you needed to prove that you weren't doing any of these [rumored] things,"

rather than the other way around.

149. Defendants Euclid City School District, Higley, Kelly and Jackson knew it would be impossible for Officer Luke to explain that he wasn't doing something that never occurred in the first place.

150. Defendants, individually and collectively, knew that the arbitrary standard of termination based on rumors violated all notions of fairness and due process.

151. Despite relying on arbitrary standards of "perception" and "rumor," Defendant Higley learned that it was Officer Luke, after Jane Doe had been suspended and after her mother was trying to get missed assignments who got the assignments through Officer Luke when none of the principals were answering her urgent calls, who secured student work assignments so that she would not fail her classes.

152. Despite relying on the arbitrary standards of "perception" and "rumor," Defendant Higley learned that it was a call from Jane Doe's mother and that the mother's number was not programmed in Officer Luke's phone.

153. Defendants Euclid City School District, Higley, Kelly and Jackson learned that it apparently violated an unwritten policy that it was improper for a parent to reach out to Officer Luke when they could not get through to administrators.

154. Defendants Euclid City School District, Higley, Kelly and Jackson knew no written policy about staff assisting parents existed.

155. Defendants provided no notice, written or otherwise, of a change in policy since Ridgley left the school district in 2019.

156. Relying on arbitrary standards of "perception" and "rumor," Defendant Higley knew that Officer Luke had never received any gifts or anything of value from parents.

157. Relying on arbitrary standards of subjective "perception" and "rumor," Defendant Higley wrongly and knowingly asserted that Officer Luke gave the student a "massage" which he knew was a mischaracterization of what had happened at the clinic by a part-time substitute nurse.

158. Defendant Higley was uninterested in getting facts from the student who would have corroborated what Officer Luke had explained.

159. Relying on the arbitrary standards of "perception" and "rumor" to the contrary, Defendant Higley stated that Officer Luke was told to keep a low profile "with females."

160. Officer Luke was never instructed to keep a low profile with females.

161. Officer Luke responded that helping a student pass, get on the Honor Roll and try to get into a good college was not doing anything wrong.

162. Officer Luke agreed that he had referred Jane Doe to her guidance counselor who was aware that Jane Doe's mother communicates with him.

163. Relying on the arbitrary standards of "perception" and "rumor," Defendants Higley, Kelly and Jackson did not challenge the fact that Officer Luke facilitated a child who was failing to encouraging the same child which resulted in her obtaining one 'B' and all 'A's for the first quarter of the year.

164. Relying on the arbitrary standards of subjective "perception" and "rumor," Defendant Higley raised an issue concerning a prior incident of "loud" student misconduct in a silent study hall in the auditorium, claiming it involved alleged purporting wrongdoing by Officer Luke.

165. Defendant Higley, however, knew that Defendant Kelly, Assistant Principal Kristin Schutte and Head Principal Janice Svodoba agreed Officer Luke was "a 100% in the right" after Kelly observed the study hall student's sibling threatening violence.

166. In fact, Defendants Higley and Kelly both knew that Defendant Kelly put the sibling and father on the "trespass list" after the sibling pushed Kelly and other security officers running through the halls looking for trouble.

167. Officer Luke responded that it meant not getting involved in the personal lives of students, staying away from social media and avoiding having and using student phone numbers.

168. Defendants Higley, Kelly and Jackson had no evidence that Officer Luke was not involved in the personal lives of students, did stay away from social media and avoided having and using student phone numbers.

169. On November 7, 2019, Defendants Euclid City School District, Higley, Kelly and Jackson, individually and collectively, under color of state law, conspired to secure the termination of fire Officer Luke.

170. The acts and conduct of the Defendants were intended to injure Officer Luke for illegitimate reasons and known to the Defendants to be illegitimate.

171. The acts and conduct of the Defendants, jointly and severally, were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

172. As a result of the acts and conduct of the Defendants, Plaintiff will suffer substantial loss in income and benefits, loss of reputation, serious physical injury and extreme mental distress.

## Count VII

## Defendants' Recommendation of Termination Based on Their Subjective Beliefs of "Seeming Affection"

173. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

174. Defendant Higley justified the exercise of government authority because he felt that an end-of-school-year letter from Jane Doe to Officer Luke showed "seemingly stated affection for you personally, and, that's a concern."

175. Officer Luke denied the subjective reading of the letter.

176. Defendants, individually and collectively, made no effort to determine the intent and meaning of the end-of-year letter.

177. The personal affection shown by other students in letters were ignored by the Defendants.

178. Defendants Higley, Kelly and Jackson intentionally misconstrued an end-of-year letter from a student without obtaining any facts concerning its meaning or purpose.

179. Defendants Higley, Kelly and Jackson knew that they misconstrued and otherwise perverted the letter in order to terminate the public employment of Officer Luke.

180. The acts and conduct of the Defendants were intended to injure Officer Luke for illegitimate reasons and known to the Defendants to be illegitimate.

181. The acts and conduct of the Defendants, jointly and severally, are intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

182. As a result of the acts and conduct of the Defendants, Plaintiff will suffer substantial loss in income and benefits, serious physical injury and extreme mental distress.

## Count VIII

## Defendants' Recommendation of Termination Based on Their Subjective Standard of (non-"romantic")"Professional Boundaries"

183. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

184. Defendant Kelly felt the termination of Officer Luke was warranted because there were statements in a letter by Jane Doe which were interpreted by the Defendants, individually and collectively, involving the

> "girl's feelings and emotions . . . and I don't mean romantic necessarily . . . " [somehow violated] "a professional boundary that far exceeds what a normal" [relationship should be.]

185. When Officer Luke inquired what that meant, Defendant Kelly stated he did a so-called "statement analysis" which drew him to the illogical and offensive conclusion that there were "subconscious things" that "implies a far more personal . . . relationship," ending with the words "I love you" at the end of the end-of-the-year letter.

186. The actions of the Defendants were not founded in fact, were personally insulting to Officer Luke and were based on arbitrary, capricious and unreasonable standards.

187. The acts and conduct of the Defendants were intended to injure Officer Luke for illegitimate reasons and known to the Defendants to be illegitimate.

188. The acts and conduct of the Defendants, jointly and severally, were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

189. As a result of the acts and conduct of the Defendants, Plaintiff has suffered and will continue to suffer substantial loss in income and benefits, loss of reputation, serious physical injury and extreme mental distress.

## Count IX

## Defendants' Recommendation of Termination Based on Their Perversion of a  Student's Year-End Letter: "we have many more memories to make"

190. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

191. Defendants Kelly and Higley felt Officer Luke's public employment should be terminated because of their perverse interpretation of the student's statement "we have many more memories to make" which they failed to understand meant memories after her graduation.

192. Defendants failed to secure any facts to substantiate their distorted interpretation.

193. Defendants said termination was inexplicably justified because the mother wrote

> "we have no relationship . . . and I don't contact him out of school. We have no relationship out of school,"

which appeared to vindicate Officer Luke.

194. In fact, Jane Doe's mother's explanation vindicated Officer Luke.

195. Defendant Kelly responded:

> "I'm not sure exactly what she meant by that"

when it was obvious what she meant, that no personal relationship existed.

196. Defendant Kelly said that "several people mentioned to me" that they wished that Officer Luke were not "fawning."

197. Defendants failed to explain what behavior constituted "fawning," how it warranted termination of employment, refused to disclose the identity of any witnesses and failed to disclose what policies of Defendant Euclid City School District were violated.

198. Despite not warning Officer Luke in advance of any specific policy, Defendants fired Officer Luke because his actions were inexplicably "not acceptable."

199. The acts and conduct of the Defendants were intended to injure Officer Luke for illegitimate reasons and known to the Defendants to be illegitimate.

200. The acts and conduct of the Defendants, jointly and severally, are intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

201. As a result of the acts and conduct of the Defendants, Plaintiff has suffered and will continue to suffer substantial loss in income and benefits, loss of reputation, serious physical injury and extreme mental distress.

**Count X**

**Defendants' Recommendation of Termination Based on Their Perverse
Conclusion that Plaintiff's Continued Employment would be "Unhealthy
Emotionally and Socially for a Little Girl"**

202. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

203. Defendant Higley felt oddly that Officer Luke's assistance requested by Jane Doe's mother was

> "unhealthy emotionally and socially for a little girl, . . .
> to have feelings of this magnitude toward an adult male."

204. No actual, psychological, medical or scientific evidence supported the absurdity of such conclusions by Defendant Higley.

205. And Defendants, individually and collectively, never inquired of the "girl" or of her mother that the facts were the opposite of their perverse hypotheses.

206. The Defendants, individually and collectively, engaged in a pattern of misconstruction and perversion, failing to employ reasonable and fair standards in evaluating Officer Luke's behavior.

207. The acts and conduct of the Defendants were intended to injure Officer Luke for illegitimate reasons and known to the Defendants to be illegitimate.

208. The acts and conduct of the Defendants, jointly and severally, are intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

209. As a result of the acts and conduct of the Defendants, Plaintiff has suffered and will continue to suffer substantial loss in income and benefits, serious physical injury and extreme mental distress.

## Count XI

### Defendants' Recommendation of Termination Based on Their Perverse Conclusion that Plaintiff's Continued Employment would be a "Perception If Somebody Else Looks at This from Outside"

210. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

211. Defendant Kelly concluded Office Luke had to be fired because

"there is a perception if somebody else looks at this from outside and there's a perception people that don't know what's going on in the district . . . ."

212. Defendant Higley stated he justified firing Officer Luke because of Defendant Kelly's supervisory role that "isn't something that he's comfortable with."

213. Defendant Higley identified an additional motivation to fire Officer Luke:

> I've got to make sure that if Channel 19 gets something that we can explain. I don't . . . and I'm not saying Channel 19 is calling or that we have any intention of exposing any of this obviously not, but if somebody were caught, and that's where I'm more concerned about. So if those letters went out on the 6 o'clock news on Channel 19 . . . and I can't defend that in the court . . . of public opinion.

214. Defendant Kelly conceded "I've watched you work multiple times and I know you do a good job."

215. Officer Luke asked why they didn't come to him in advance with their concerns in order to rectify any concern the district had and that none of the accusations of rumors were well founded, but accusations of rumors "persist, is my point. They persist," according to Defendant Kelly.

216. The prophetic response was "perception" because "next week there will be somebody else."

217. Defendants discouraged Officer Luke from appealing their decision with the Superintendent who recommended termination.

218. Defendant Kelly told Officer Luke that rumors about him were "undermining the chain of command . . . it's the perception."

219. The acts and conduct of the Defendants were intended to injure Officer Luke for illegitimate reasons and known to the Defendants to be illegitimate.

220. The acts and conduct of the Defendants, jointly and severally, are intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

221. As a result of the acts and conduct of the Defendants, Plaintiff will suffer substantial loss in income and benefits, serious physical injury and extreme mental distress.

## Count XII

## Defendants' Recommendation of Termination Despite Their Concession There was No Evidence

222. Defendant Higley told Officer Luke he wanted him to be terminated

"whether they're rumors or not, thank God we haven't found anything."

223. The acts and conduct of the Defendants were intended to injure Officer Luke for illegitimate reasons and known to the Defendants to be illegitimate.

224. The acts and conduct of the Defendants, jointly and severally, were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the Plaintiff.

225. As a result of the acts and conduct of the Defendants, Plaintiff has suffered and will continue to suffer substantial loss in income and benefits, serious physical injury and extreme mental distress.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff LUKASZ SUHAK urges this Court to grant the following relief:

A. Declare the acts and conduct of the Defendants, jointly and severally, having acted under color of state law, constitute violations of the policy of the defendant Euclid City School District and of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983 and for engaging in a conspiracy among the defendant to deprive the plaintiff of rights ensured under the Constitution of the United States;

B. Enjoin the Defendants from employing the power of governmental authority under color of state law from punishing employees based on rumor and to establish a policy which comports with fundamental notions of due process, including a procedure to provide fair notice, hearing and a process in which employees are aware of claims by Defendants and an ability to respond fairly to claims;

C. Order the reinstatement of Plaintiff Officer Luke with all back pay and benefits and require Defendants to expunge any and all negative inclusions in any and all files it retains involving Officer Luke;

D. Order Defendants to make Plaintiff whole by providing compensation for injury arising out of related emotional pain, suffering, loss of enjoyment of life, inconvenience, humiliation and other related costs in an amount to be determined at trial;

E. Grant to the Plaintiff and against Defendants appropriate compensatory damages;

F. Grant to the Plaintiff and against Defendants Papouras, Higley, Kelly and Jackson, jointly and severally, appropriate punitive damages;

G. Order Defendants to be responsible for and pay the costs and statutory reasonable attorney fees;

H. Grant continuing jurisdiction over this matter and grant such further relief as the court deems necessary, proper, just and equitable in advancing the public interest.

*s/ Avery Friedman*

Avery Friedman    (0006103)
AVERY FRIEDMAN & ASSOCIATES
701 The City Club Building
850 Euclid Avenue
Cleveland, Ohio 44114-3358
P: (216) 621-9282
F: (216) 621-9283
avery@lawfriedman.com
fairhousing@gmail.com

*Attorney for Plaintiff Lukasz Suhak*

## **TRIAL BY JURY DEMANDED**

Plaintiff hereby demands trial by jury.

*s/Avery Friedman*